**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 12-62163–Civ–Dimitrouleas/Snow

PENTAIR FILTRATION SOLUTIONS,
LLC, a Delaware limited liability company,
and PENTAIR RESIDENTIAL
FILTRATION, LLC, a Delaware limited
liability company,

        Plaintiffs,

vs.

SUPERIOR WATER SYSTEMS CO. INC.,
a Florida Corporation, d/b/a Superwater, and
JACQUES HARRIS LOBATO, individually,

        Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) OF THE FEDERAL
RULES OF CIVIL PROCEDURE AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Superior Water Systems Co., Inc., d/b/a Superwater, and Jacques Lobato respectfully move the Court for an order dismissing Plaintiffs Pentair Filtration Solutions, LLC and Pentair Residential Filtration, LLC's complaint with prejudice.[1] For the reasons that follow, the complaint fails to state a claim upon which relief can be granted, and should be dismissed.

**INTRODUCTION**

Though dressed up as a trademark action, this suit is about something else entirely. At bottom, what Plaintiffs seek is to control the downstream market for resales of Everpure water filtration products, and particularly online reselling by discount retailers like Superwater.com.

---

[1] For ease of reference, Pentair Filtration Solutions, LLC will be referred to herein as "Pentair Filtration," and Pentair Residential Filtration, LLC will be referred to as "Pentair Residential" and Plaintiffs collectively will be referred to as "Pentair" or "Plaintiffs."

1

Before filing suit, Pentair tried, but failed, to coerce Superwater to sign onto Pentair's minimum advertised pricing (MAP) policy for Everpure products. Unable to force Superwater to charge higher prices—because Superwater does not buy its Everpure products directly from Pentair, Pentair did not have the option of coercing Superwater's compliance by threatening to stop selling to Superwater—Plaintiffs are now attempting to use this Court to accomplish that end. [2]

In so doing, Plaintiffs have joined a disturbing trend of manufacturers filing abusive trademark lawsuits attempting to expand trademark rights into rights to control the aftermarket, and retail prices, for their products. Plaintiffs' suit is fatally flawed because has nothing to do with preventing consumer confusion about the origin of Everpure or any other products. Pentair's own exhibits show that Superwater simply resells products made by Pentair and other manufacturers—having done so for more than 15 years without objection—and prominently discloses the manufacturer of each product. They show only Everpure products labeled with the Everpure trademark, and non-Everpure products conspicuously labeled as such. Plaintiffs apparently hope that by filing a threadbare, conclusory complaint—the only kind they could possibly file, as no facts supporting trademark liability could be alleged in good faith—they can intimidate Superwater to either raise prices or cease selling Everpure products intended for residential use altogether.[3] Plaintiffs are mistaken.

---

[2] Pentair's aggressive MAP policy push follows on the heels of *Leegin Creative Leather Products, Inc. v. PSKS, Inc*., 551 U.S. 877 (2007), in which the Supreme Court held that it is not a *per se* violation of the Antitrust laws to enforce MAP policies by refusing to sell to non-complying resellers. The Supreme Court did not, however, create new trademark rights to enable enforcement of MAP policies against downstream resellers.

[3] Separate lines of Everpure products are sold for residential/consumer use, on the one hand, and for commercial/food service use, on the other. Plaintiffs' claims appear to be directed only at Superwater's sales of residential products, as the only product identified in its Exhibits is a residential product.

And their claims are wholly meritless. Courts in this District and others have soundly rejected such attempts to control aftermarket sales of genuine products under the guise of trademark rights, for the simple reason that trademark rights end with the owner's "first sale" of the product. This Court should follow suit, and dismiss all of Pentair's claims. Moreover, because, as a matter of law, Plaintiffs cannot possibly state a claim against Defendants for the mere act of reselling Everpure products, the complaint should be dismissed with prejudice.

## THE COMPLAINT'S ALLEGATIONS

Plaintiffs allege that Pentair Filtration owns a trademark registration for use of the Everpure trademark on "Water purification devices, namely, filter cartridges, filter heads and filter housings." Complaint ¶12 & Composite Exhibit A to Complaint (emphasis added).[4] They allege in conclusory fashion, "[o]n information and belief," that Defendants "are in the business of producing, distributing and selling water purification devices, including but not limited to water filters, and water filter systems, using packaging and components that are not true Pentair products in combination with components that may be Pentair components and falsely representing all the components as true EVERPURE® products being furnished by PENTAIR under its EVERPURE® trademark." Comp. ¶18. Exhibit D to the complaint shows that Superwater is an online retailer of water filters and related products. Plaintiffs say they have not given Defendants "a license, permission or authority to use" the Everpure trademark "on any of Defendants' products, systems, or marketing materials." *Id*. ¶19. And they state that without Plaintiffs' permission, Defendants "are offering and selling water filter components and systems and related products unlawfully bearing" that trademark. *Id*. ¶20.

---

[4] It is proper to consider the exhibits to the complaint in evaluating a motion to dismiss. *See, e.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Plaintiffs say they sell "water filtration systems" in boxes, but do not allege that they *only* sell such "water filtration systems" in that manner, nor do they allege, because they cannot allege, that they do not also sell filters and filter heads individually. Comp. ¶21. In Composite Exhibit B, they attach photographs of one product packaged in a box as their only support for that allegation. Composite Exhibit C to the Complaint supposedly shows "water filter components and systems and related products" that supposedly unlawfully bear that trademark, but Plaintiffs affirmatively allege that some of the products Defendants sell are in fact genuine Everpure products, and they do not identify which of the articles contained on the nine pages of photographs in Exhibit C are "true Pentair products" and which are not Pentair products but have supposedly been misrepresented as such. *See* Comp. ¶21 & Exh. C. Exhibit C contains photographs of shipping boxes and contents that appear to have been unpacked from them. Plaintiffs do not allege, and the photographs in Exhibit C do not show, that the products contained in those shipping boxes were represented by Defendants to be the same products reflected in Exhibit B. *See* Comp. ¶¶21-22 & Exh. C. Nor do the photographs in Exhibit C show whether the products that appear to have been shipped in the shipping boxes were sold as "filtration systems" or as a filter, filter head, and accessories sold separately. In fact, six of the nine photographs in Exhibit C give no indication that they are in any way associated with Superwater.

The complaint states in conclusory fashion that "Defendants have created counterfeit products taking filters of PENTAIR's EVERPURE® brand and combining them with various other and unauthorized components to make up an imitation counterfeit of the PENTAIR EVERPURE® product system." Comp. ¶22. Although Superwater sells many different Everpure products, including filters and and filter heads sold individually, the complaint appears to take

4

issue only with what it characterizes as sales of "water filtration systems," which refers to selling a filter and a filter head together, rather than selling each separately, with which Superwater sometimes sells an optional "Superwater accessory pack" for purchase. The only factual enhancement they offer to augment their naked assertions is to point to Composite Exhibit C, which they say contains "water systems sold by Defendants that have improper head units, without proper instruction and information sheets, no fittings or unauthorized fittings, and unauthorized tubing, all stuffed with old newspaper into a carton being made from an inverted UPS box." Exhibit D to the complaint contains a printout of a page on the superwater.com website, which states that "due to changes beyond our control, we are now only allowed to call ourselves an Independent Dealer for the Home Product Line only, yet we are 100% Authorized to sell The Everpure Foodservice Line" and that "we now consider ourselves an Independent Local Dealer for all of the products we stock and sell[.]"

The complaint contains five counts: (1) Trademark Infringement under 15 U.S.C. §1114; (2) Trademark Dilution under 15 U.S.C. §1125(c); (3) False Designation of Origin under 15 U.S.C. §1125(a); (4) Unfair Competition under Florida common law; and (5) Dilution under §495.151, Florida Statutes. In each count, Plaintiffs do no more than state legal conclusions parroting the statutory requirements for liability without explanation of the facts they contend show satisfaction of those elements. *See* Comp. ¶¶29-67.

## ARGUMENT

As detailed below, Plaintiffs have failed to, and cannot, allege facts plausibly suggesting that they are entitled to relief on any of their claims. As such, Plaintiffs have not opened the door to discovery, and their complaint should be dismissed with prejudice.

5

I.       RULE 12(b)(6) STANDARDS

To survive a motion to dismiss, a "complaint must state a plausible claim for relief." *FTC v. Watson Pharms., Inc.*, 677 F.3d 1298, 1306 (11th Cir. 2012) (quoting *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)). To satisfy this standard, "the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 559 (2007)). A complaint fails to meet that standard unless it contains sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs must thus do more than simply allege "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. at 1324 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662 (quoting *Twombly*, 550 U.S. at 557).

In evaluating the complaint, the Court should not assume that legal conclusions and conclusory allegations are true. *Chandler v. Sec'y of the Fla. DOT*, 695 F.3d 1194, 1198-1199 (11th Cir. 2012) ("'[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions'") (quoting *Iqbal*, 556 U.S. 662)); *Sinaltrainal*, 578 F.3d at 1260 (noting that under *Iqbal*, "conclusory allegations" must not be assumed to be true). The same is true of "unwarranted deductions of fact." *Sinaltrainal*, 578 F.3d at 1260. Thus, the Court's first task is determine which (if any) of the complaint's allegations are "well-pleaded factual allegations" that should be considered in determining the complaint's sufficiency, and which of the allegations are conclusory and must be disregarded. *Resnick*, 693 F.3d at 1325. The

Court must then look to the substantive law underlying the claims, and decide whether the factual allegations plausibly show satisfaction of the elements of each claim for relief asserted. *Id*. Plaintiffs have not alleged and cannot allege facts sufficient to plausibly suggest that Defendants' conduct satisfied the elements of any of its asserted causes of action.

## II.   THE COMPLAINT FAILS TO STATE ANY CLAIM ON WHICH RELIEF CAN BE GRANTED

Plaintiffs' complaint relies almost exclusively on conclusory allegations, labels, and naked assertions devoid of factual enhancement that cannot state a claim under *Twombly*. Its few factual allegations, from which it is difficult to even discern of what conduct Plaintiffs complain, fail to plausibly suggest an entitlement to relief under any of Plaintiffs' theories.

### A.   Standards for Stating a Cause of Action Under Plaintiffs' Theories

In Count I, Plaintiffs regurgitate the statutory language of 15 U.S.C. §1114 to claim entitlement to relief based on trademark infringement. In Count IV, they make conclusory assertions to claim entitlement to relief based on unfair competition under Florida common law. The standard for stating a claim under both theories is the same. *Turner Greenberg Associates, Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004), *aff'd,* 128 Fed. Appx. 755 (11th Cir. 2005) (citing *Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1475 n. 3 (11th Cir.1991)).

To survive a motion to dismiss under either theory, a plaintiff must allege sufficient factual matter to plausibly suggest that: "(1) it owns the trademarks at issue; (2) defendants used the marks without authorization; and (3) defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of defendants' goods." *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1361 (M.D. Fla. 2012). To state a claim under Count III of the complaint, which relies on 15 U.S.C. §1125(a), Plaintiffs must meet the

7

same standard of plausibly suggesting consumer confusion as is applicable to its claims in Counts I and IV. *See Tana v. Dantanna's*, 611 F.3d 767, 773 n.5 (11th Cir. 2010) ("The factors relevant to establishing [a likelihood of confusion with respect to false designation of origin under 15 U.S.C. § 1125(a)] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114") (quoting *Ross Bicycles, Inc. v. Cycles USA, Inc.,* 765 F.2d 1502, 1503–04 (11th Cir.1985) (brackets in *Tana*); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 592 (5th Cir. 1993) (explaining that likelihood of confusion is the "the touchstone" of a claim under §1125(a)). "A 'likelihood of confusion' means that confusion is not just possible, but probable." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004). Plaintiffs have not and cannot allege factual matter to plausibly suggest that consumer confusion is the probable result of Superwater's resale of Everpure products.

The same standards apply to Plaintiffs' state law dilution claim as to their claim for dilution under 15 U.S.C. §1125(c). *Brain Pharma*, 858 F. Supp. 2d at 1359 ("[B]oth the Federal and Florida state causes of action for dilution involve the same principles") (quoting *Provide Commerce, Inc. v. Preferred Commerce, Inc.,* No. 07–80185 CIV, 2008 WL 926777, at *4 (S.D.Fla. Apr. 4, 2008)). Under either theory, "[t]o establish a dilution claim, a plaintiff 'must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce.'" *Id.* at 1356. Plaintiffs have not and cannot allege facts sufficient to plausibly suggest that dilution law even applies to Pentair Filtration's trademarks, much less that Superwater has diluted them.

### B. All of Plaintiffs' Claims are Barred by the First Sale Doctrine

"[T]rademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir.1991). All of Plaintiffs' claims must fail because Superwater's resale of admittedly genuine Everpure filters and filter heads cannot violate trademark law and are barred by the so-called first sale doctrine. To bring a trademark claim and establish confusion between the trademarked product and the defendant's product, the trademark owner "must establish that the products sold by the alleged infringer are not 'genuine.'" *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998). Plaintiffs' complaint affirmatively alleges the opposite: that the filters Superwater sells bearing the Everpure trademark are, in fact, "filters of PENTAIR's EVERPURE® brand." Comp. ¶22. The only factual enhancement Plaintiffs offer for their naked assertion that Superwater has somehow misused the Everpure trademark is to point to Exhibit C. But the photographs contained in Exhibit C, which supposedly identify the offending products, do *not* show the Everpure trademark being used other than on the filter and filter head that Plaintiffs not only do *not* allege are anything other than genuine Everpure products, but to the contrary, affirmatively allege to be genuine Everpure products.[5]

Despite Plaintiffs' claim that Superwater sold products without their permission, Plaintiffs have not and cannot state a claim under trademark law based on Superwater's resale of genuine Everpure products:

> The resale of genuine trademarked goods generally does not constitute infringement…This is for the simple reason that

---

[5] Although the complaint refers to "filtration systems" as if they were trademarked products or something other than the sale of a filter and a filter head sold in a single transaction, the only trademark claimed by Pentair Filtration is for use of EVERPURE® on "filter cartridges, filter heads and filter housings," not "filtration systems." Comp. Exh. A.

9

> consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale…Under what has sometimes been called the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product…Therefore, even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good does not violate the Act.

*Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301-1302 (11th Cir.2001) (citations omitted); *see also, e.g., McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 923-24 (Fed. Cir. 1995) ("It is a tautology that a consumer purchasing genuine goods receives exactly what the consumer expects to receive: genuine goods. The consumer is not confused or deceived about the source or quality of the product"). Thus, because Plaintiffs have alleged no facts plausibly suggesting that Superwater has sold any product bearing the Everpure trademark that was not, in fact, a genuine Everpure product, Plaintiffs cannot show a likelihood of confusion, and their claims are barred by the first sale doctrine. As such, Plaintiffs claim for trademark infringement under 15 U.S.C. §1114, for common law unfair competition, and for false designation of origin under 15 U.S.C. §1125(a) fail as a matter of law.

Nor have Plaintiffs alleged facts plausibly suggesting that the genuine Everpure filters and filter heads on which the Everpure trademark is shown in Exhibit C have been altered, such that they could be characterized as "materially different" from the original products sold by Pentair. *Cf. Davidoff*, 263 F.3d at 1302 (holding that "the resale of a trademarked product that has been altered, resulting in physical differences in the product, can create a likelihood of consumer confusion"); *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1353 (S.D. Fla. 2012) ("The Eleventh Circuit has held that the resale of a trademarked product that has been altered, resulting in physical differences in the product, is a material difference that can create a likelihood of consumer confusion"). Indeed, Exhibit C shows Everpure filters that are packaged

in factory-sealed wrapping, contradicting any assertion that they had been physically altered prior to sale, even had Plaintiffs made such an allegation, which they have not. Similarly, although the filter heads in Exhibit C are not shown to be wrapped in plastic, the same is true of the filter heads shown in Exhibit B, which appear to be identical to the filter heads shown in Exhibit B. [6] Thus, even if Plaintiffs had alleged that the products in Exhibit C were represented to be the same products as are shown in Exhibit B (and they have not), neither the complaint's factual allegations nor the facts discernible from the exhibits plausibly suggest that Superwater has physically altered any product on which the Everpure trademark appears.

It appears that Plaintiffs rest their claims on their allegations that Superwater has sold other products at the same time as it sold Everpure filters and filter heads, and shipped all of those products in the same shipping box, without asking for Plaintiffs' permission to sell those other products. *See* Comp. ¶22 & Exh. C. Plaintiffs complain that the boxes in Exhibit C, in addition to containing a genuine Everpure filter on which the Everpure trademark is shown and a genuine Everpure filter head on which the Everpure trademark is shown, also contain tubing—on which the Everpure trademark is *not* used, according to the photographs in Exhibit C—that Plaintiffs nakedly assert is "unauthorized." Comp. ¶22. They similarly nakedly assert that the fittings contained in the boxes, on which the Everpure trademark is *not* used, according to the photographs in Exhibit C, are "unauthorized." *Id*. Plaintiffs also appear to assert, without factual

---

[6] As noted, Plaintiffs have not alleged that they only sell filters and filter heads in boxed sets. Nor could they make such an allegation in good faith, as filters and filter heads are widely sold both individually and in "systems." The photographs in Exhibit C, which provide the only factual enhancement offered for Plaintiffs' conclusory assertions, give no indication that the products shown were represented to be an Everpure filtration system rather than what they appear to be: filters, filter heads, and accessories sold to the same customer and shipped in the same shipping box to that customer.

11

enhancement, that it was "improper" to sell the filter heads contained in one or more of the photographs with a particular filter. *See id*.

But there is no support for Plaintiffs apparent belief that a trademark confers on its owner the right to control what other products a reseller may sell to a purchaser at the same time as a trademarked product is sold, nor to control what other products are placed in the same shipping box as a trademarked product. As a matter of common sense, selling another product simultaneous with a trademarked product does not in any way change the trademarked product, much less transform it from a genuine product to a "counterfeit" product. Indeed, if such a theory were accepted, it would render the first sale doctrine a nullity. Plaintiffs' apparent theory of trademark rights is wholly lacking in legal merit.

Moreover, the first sale doctrine can only be overcome when the products sold by a reseller are "materially different" from the products sold by the trademark owner, i.e., different in a way that is relevant to consumers. *Brain Pharma*, 858 F. Supp. 2d at 1353 (citing *Davidoff*, 263 F.3d at 1301). Plaintiffs have neither alleged that the Everpure filters and filter heads allegedly sold by Superwater were materially different from the Everpure filters and Everpure filter heads sold by Plaintiffs nor offered any facts to plausibly support such an assertion if it had been made. Thus, even if the complaint had alleged that the trademarked products Superwater is alleged to have sold, i.e., Everpure filters and Everpure filter heads, were *somehow* different from the filters and filter heads sold by Plaintiffs, Plaintiffs' claims would still be barred by the first sale doctrine.

Nor can Plaintiffs overcome the first sale doctrine by making the naked assertion, without factual enhancement, that "unauthorized tubing, fittings, and valves can cause a health problem to consumers, as well as system malfunction." Comp. ¶22. Plaintiffs appear to make that

allegation in an attempt to overcome the first sale doctrine by showing that the Everpure products sold by Superwater are of lesser quality than the products sold by Plaintiffs. But it is not enough to state in conclusory fashion that Superwater's products are inferior. *See, e.g., Brain Pharma*, 858 F. Supp. 2d at 1354-55 (finding conclusory allegations about a reseller's products not meeting quality control standards failed to state a claim).

Plaintiffs allege only that certain tubing, fittings, and valves sold by Superwater "can cause" i.e., are capable of causing, "a health problem" or a "system malfunction." But Plaintiffs have made no factual allegations to support this naked assertion. Indeed, Plaintiffs have not alleged that *anyone* has *ever* experienced such "a health problem" or "system malfunction" in the 17+ years Superwater has been selling Everpure products, nor that these products are even *likely* to cause such issues. And Plaintiffs have not alleged, and cannot allege, any facts supporting the naked assertion that the tubing, fittings and valves sold by Superwater is more likely to cause health problems or malfunctions than the tubing, fittings, and valves that Plaintiffs may include in certain boxed sets or "systems." *See Iberia Foods*, 150 F.3d at 304 (explaining that a trademark owner must show that "consumer confusion regarding the sponsorship of the products could injure the trademark owner's goodwill"). Moreover, as noted, Plaintiffs sell Everpure filters and filter heads individually as well as in boxed sets, and Plaintiffs have not alleged that Superwater represented the products reflected in Exhibit C to be an Everpure boxed set. Thus, Plaintiffs could not overcome the first sale doctrine even if they had properly alleged that Superwater sold tubing, fittings, and valves that were inferior to the tubing, fittings, and valves that Plaintiffs allege Pentair includes in their boxed sets.

### C. Plaintiffs Have Failed to Allege Facts Plausibly Suggesting that Consumers Are Likely to Believe that Superwater is Affiliated With Pentair

In Count I of the complaint, Plaintiffs claim trademark infringement based on the bald assertion that Superwater has claimed to be "affiliated with or authorized by Pentair to distribute or sell its products." Comp. ¶32. That naked assertion, without factual enhancement, is insufficient to plausibly suggest probable consumer confusion. *See Brain Pharma*, 858 F. Supp. 2d at 1356 (dismissing a similar claim because "the Court finds that Plaintiff fails to allege facts which could establish that Defendants caused consumer confusion by representing themselves as Plaintiff's authorized agent"). Plaintiffs have offered no factual allegations that could plausibly suggest that consumers probably believe that Superwater is affiliated with or authorized by Pentair.

Not only does Plaintiffs' reference to Exhibit D fail to save this claim, but it actually refutes it. The description on the webpage contained in that exhibit could not cause anyone to believe that Superwater is "affiliated with or authorized by Pentair" or to believe anything else about Pentair because neither the word "Pentair" nor any derivation thereof appears anywhere in the description. Indeed, although in one place the description states that Superwater is "authorized to sell the Everpure Foodservice Line," it does not say that it was the maker of Everpure that conferred such authorization.[7] Moreover, the webpage clarifies that "we now consider ourselves an Independent Local Dealer for *all of the products* we stock and sell," which by definition includes all Everpure products Superwater sells. And the description makes clear that Superwater is a seller of multiple products, among which are Everpure products, and not an Everpure dealer as such. In its context, the webpage description in Exhibit D, as a matter of law,

---

[7] The authorization referred to is authorization from the supplier from which Superwater buys the "Everpure Foodservice Line" products it resells.

14

is not likely to cause consumers to believe that Superwater is affiliated with authorized by Pentair to do anything.

### D.  Pentair Residential Has Not Alleged and Cannot Allege Standing to Sue

Even putting aside the other defects in the complaint, Pentair Residential's trademark claims would still fail because Plaintiffs have failed to allege facts showing that it is statutorily authorized to sue. "Section 32(1) of the Lanham Act allows only a 'registrant' to bring a civil action under that section for any of the forms of trademark infringement made unlawful therein." *Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 391 (S.D.N.Y. 2011) (citing 15 U.S.C. §1114). Plaintiffs have failed to allege any facts suggesting that Pentair Residential owns any trademark. Indeed, they allege to the contrary, that Pentair Filtration "is the owner of the trademark registration" at issue. Comp. ¶12. As such, Pentair Residential cannot state a claim for relief for trademark infringement.

### E.  Plaintiffs Have Failed to Allege Facts Plausibly Suggesting Dilution

Even if Plaintiffs' dilution claims were not barred by the first sale doctrine, their conclusory and bare bones allegations would still fail to state a claim for dilution. As an initial matter, "Trademark dilution claims, are limited to 'truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls.'" *Brain Pharma*, 858 F. Supp. 2d at 1357 (quoting *Dahon N. Am., Inc. v. Hon,* No. 2:11–cv–05835–ODW (JCGx), 2012 WL 1413681, at *9 (C.D.Cal. Apr. 24, 2012)). Plaintiffs make only conclusory allegations as to their trademark's alleged famousness, and do not and cannot allege that Pentair Filtration's mark is sufficiently famous to satisfy this standard. Their dilution claim fails for this additional reason. *See Brain Pharma*, 858 F. Supp. 2d at 1357 ("Plaintiff's mere allegation that the BPI mark is famous is insufficient to state a trademark dilution claim").

15

More important, reselling genuine products bearing a trademarked name cannot, as a matter of law, amount to dilution of the trademark. *See Scott Fetzer*, 381 F.3d at 490 ("Scott Fetzer's theory would allow a markholder to cry dilution every time a resold or repaired product reflected poorly on the mark it bore…We refuse to encourage anti-dilution law to metastasize in this manner"); *Ty Inc. v. Perryman*, 306 F.3d 509, 513 (7th Cir. 2002) (Posner, J.) (rejecting dilution claim against reseller because "[w]e do not think that by virtue of trademark law producers own their aftermarkets and can impede sellers in the aftermarket from marketing the trademarked product"). Indeed, Superwater has no choice but to sell Everpure products with their trademarks intact. *See Perryman*, 306 F.3d at 512 ("You can't sell a branded product without using its brand name, that is, its trademark"). Thus, Plaintiffs cannot state a claim for trademark dilution on the basis of Superwater's resale of genuine Everpure products.

Even if it were otherwise, Plaintiffs' dilution claims would still fail, as Plaintiffs have failed to support their naked assertions that Superwater has somehow diluted their trademarks with any factual enhancement. As noted above, Plaintiffs have failed to allege facts plausibly suggesting that Superwater has sold Everpure filters and Everpure filter heads in a manner that is any different from the manner in which Pentair sells them. Nor have they alleged any facts plausibly suggesting that Superwater's manner of selling them, even if different, is so inferior as to tarnish the Everpure trademark. Indeed, Plaintiffs have not even alleged that Superwater sells these products in a manner that is at variance with the manner in which they are sold and shipped by other resellers.

Ultimately, Plaintiffs' claims boil down to their only factual allegations—that Superwater resells filters and filter heads at the same time as it sells other products that are not trademarked, without Pentair's permission. Those allegations fail to state a claim for dilution just as they fail

16

to state claims for trademark infringement, false designation of origin, and common law unfair competition.

## CONCLUSION

Because Plaintiffs' claims seek to expand trademark law to afford rights that not provided under federal or state law, and because Plaintiffs have failed to allege non-conclusory, factual allegations plausibly suggesting that they are entitled to recover under any of their theories, Plaintiffs' complaint should be dismissed with prejudice, in its entirety.

Dated: December 14, 2012

                                          Respectfully submitted,

                                          /s/ Daniel A. Bushell              .
                                          Daniel A. Bushell (Florida Bar No. 43442)
                                          dan@bushellappellatelaw.com
                                          BUSHELL APPELLATE LAW, P.A.
                                          101 Northeast Third Avenue, Suite 1100
                                          Fort Lauderdale, Florida 33301
                                          Phone: 954-666-0220
                                          Fax:    954-666-0225
                                          Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day to all counsel of record identified on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.

                                               /s/ Daniel A. Bushell              .

## **SERVICE LIST**

CASE NO. 12-62163–Civ–Dimitrouleas/Snow

Vijay Gibran Brijbasi (vbrijbasi@ralaw.com)
Laurence Stephan Litow (lslitow@ralaw.com)
Robert Edward Pershes (rpershes@ralaw.com)
ROETZEL & ANDRESS LPA
350 East Las Olas Boulevard, Suite 1150
Fort Lauderdale, Florida 33301