**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 12-62163–Civ–Dimitrouleas/Snow

PENTAIR FILTRATION SOLUTIONS,
LLC, a Delaware limited liability company,
and PENTAIR RESIDENTIAL
FILTRATION, LLC, a Delaware limited
liability company,

        Plaintiffs,

vs.

SUPERIOR WATER SYSTEMS CO. INC.,
a Florida Corporation, d/b/a Superwater, and
JACQUES HARRIS LOBATO, individually,

        Defendants.
_____/

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

BUSHELL APPELLATE LAW, P.A.
101 Northeast Third Avenue, Suite 1100
Fort Lauderdale, Florida 33301
Phone: 954-666-0220
Fax:   954-666-0225

*Counsel for Defendants*

## **INTRODUCTION**

Plaintiffs' complaint relies almost exclusively on labels, conclusory allegations, and naked assertions without factual enhancement, none of which should be accepted as true when considering a motion to dismiss. The only facts alleged are supplied by Plaintiffs' exhibits, which relate to a single shipment of one type of filter and one filter head by Superwater, and one type of product that the complaint alleges Plaintiffs sometimes, but not always, sell in boxed sets.

In their response, Plaintiffs do not ask the Court to infer the facts necessary to plausibly suggest that Defendants have violated any law, likely because they cannot in good faith assert that such facts are true. Plaintiffs do not ask the Court to infer that they always sell their filters and filter heads with the characteristic they say Superwater's products lack, i.e., in boxed sets, or that they have never authorized sales in precisely the manner of Superwater's sales. Even as to the product shipment reflected in Exhibit C, the only conduct about which Plaintiffs allege *any* facts, Plaintiffs do not dispute that the only use of the Everpure trademark its display on the filter and filter head, which Plaintiffs do not dispute are a true Everpure filter and Everpure filter head.

Yet these glaring deficiencies pale in comparison to the complaint's total lack of factual allegations about violations arising from sales of other, unspecified products that Plaintiffs claim in their response are also covered by the complaint's allegations. In the absence of *any* factual allegations about any of those unidentified products, much less how they supposedly materially differ from products Plaintiffs authorized for sale, Plaintiffs certainly cannot state a claim as to them. *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997) (holding that each product must be evaluated to determine whether sale of the same product has ever been authorized for sale by the trademark holder).

1

Nor is the complaint saved by Plaintiffs' devotion of the bulk of their response to arguing that their conclusory allegations are actually factual, and that their recitation of the elements of their causes of action states claims. Plaintiffs also use the word "counterfeit" repeatedly, but it is still merely a "label" that should carry no weight. And contrary to Plaintiffs' contention, Defendants do *not* admit the truth of Plaintiffs' conclusory allegations, although their motion, they properly accept as true, for purposes of the motion only, the few allegations that might be considered factual. Superwater expressly denies that it has ever sold *any* product bearing the Everpure trademark that was not a genuine Everpure product.

Moreover, Plaintiffs have failed to cite a single case that has ever found reselling a genuine trademarked product that had *not* been physically altered was a "counterfeit" merely because it was sold and shipped together with other products on which the trademark was *not* displayed. For all of the reasons set forth in the motion, and as further explained below, Plaintiffs have failed to state a claim on which relief can be grounded.

## ARGUMENT

### I.   PLAINTIFFS HAVE NOT ALLEGED AND CANNOT ALLEGE THAT THE PRODUCTS SOLD BY SUPERWATER ARE MATERIALLY DIFFERENT

Plaintiffs' response to the motion is perhaps most notable for what it does *not* say, and does *not* claim to be a reasonable inference from the complaint. First, Plaintiffs do not dispute that Exhibit C only shows the Everpure trademark displayed on a filter and filter head, which they do not dispute are, in fact, an Everpure-branded filter and filter head. Instead, Plaintiffs purport to invoke an exception to the first sale doctrine that applies when the re-sold product is "materially different" from the original. *See* Doc. 21 at 6-7. Second, Plaintiffs do not dispute that, as Defendants pointed out in their motion, neither the filter nor the filter head shown in Exhibit C have been physically altered, and neither has even been removed from factory

2

packaging. Instead, Plaintiffs rest on the label "counterfeiting" in their conclusory allegation that Defendants have "combined" Everpure filters with "various other and unauthorized components to make up an imitation counterfeit…" Doc. 21 at 5.

Such conclusory allegations cannot be taken as true, and the only factual support Plaintiffs offer is Exhibit C, which does not in any way indicate that the products contained in the shipping box were represented to be an Everpure water filtration system. Ironically, Plaintiffs attempt to show that Superwater misrepresented that the products in Exhibit C were an Everpure system by showing that the box they were shipped in was *not* an Everpure box. As set forth below, Plaintiffs' allegations also fail to plausibly suggest that the materially different exception applies for multiple other reasons.

### A. Plaintiffs Do Not Claim That They and Their Authorized Distributors Have Sold Substantially All of Their Products in Boxed Sets

Even if shipping Everpure filters and filter heads in a shipping box with non-trademarked products set could be construed as a material difference in the trademarked products, Plaintiffs' allegations would still fail to state a claim because Plaintiffs do not allege that they only presently sell, much less that they have always only sold, Everpure filters and heads in such boxed sets. As identified in the motion, one of the fatal flaws in the complaint is that although the complaint alleges that "PENTAIR's filtration systems are sold boxed," it does not allege, because Plaintiffs cannot in good faith so allege, that Everpure filters and filter heads or Everpure "filtration systems"—which Plaintiffs do not dispute simply consist of an Everpure filter and an Everpure filter head sold together—are always sold in such boxed sets. *See* Doc. 17 at 4 & 11; Comp. ¶21. In other words, as Defendants pointed out, the complaint merely alleges that Plaintiffs *sometimes* sell filters and filter heads in boxed sets, not that they are exclusively sold in such boxed sets by it or its authorized resellers.

3

Selling the filter and filter head in Exhibit C outside of an Everpure boxed set cannot be a material difference from Plaintiffs' own products because Plaintiffs do not allege that they always or almost always sell these products in boxed sets—indeed, Plaintiffs do not ask the Court to make such an inference. Yet, the very authority on which Plaintiffs purport to rely, makes clear that Plaintiffs cannot prevail on their claims without such an allegation. *See SKF USA Inc. v. Int'l Trade Com'n*, 423 F.3d 1307, 1315 (Fed. Cir. 2005) ("[I]f it cannot be said that substantially all of a trademark owner's goods are accompanied by the asserted characteristic, then it may properly be concluded that, in effect, there exists no material difference between the trademark owner's goods and the allegedly infringing goods").

In that case, SKF, the manufacturer, argued that so-called "gray market" (unauthorized import) versions of its product were materially different from the products it authorized for domestic sales because post-sale technical support was not provided for the gray market goods. *Id.* The Federal Circuit, however, held that even if this difference was material, SKF could not establish trademark violations because it had not shown that such post-sale technical support was provided for all or substantially all of the products it did authorize for sale. *Id.* at 1315-1316. If the manufacturer itself sometimes sells products without the characteristics the alleged infringer's product is said to lack, as a matter of law, there cannot be consumer confusion:

> [A] plaintiff…must establish that all or substantially all of its sales are accompanied by the asserted material difference in order to show that its goods are materially different... Indeed, if it cannot be said that substantially all of a trademark owner's goods are accompanied by the asserted characteristic, then it may properly be concluded that, in effect, there exists no material difference between the trademark owner's goods and the allegedly infringing goods.

*Id.* at 1315. Plaintiffs have not alleged that substantially all of their filters and filter heads are sold in boxed sets, nor that substantially all of their "filtration systems" are sold in that manner.

In fact, the Fifth Circuit has held that even when a trademark owner does not currently sell a product in the manner that is alleged to be materially different, but has sold the product in the same manner in the past, even a single time, the trademark owner cannot establish that a reseller's products are "materially different." *See id.* at 1315-1316 (discussing and relying on *Martin's Herend*, 112 F.3d 1296); *see also Martin's Herend*, 112 F.3d at 1304 (Explaining that a trademark owner "should not be heard to complain that the trademark is infringed when a good previously approved for sale is deleted from [its] current catalogue. In such circumstances the first sale rule's policies of limiting restraints on trade and alienation of personal property outweigh the trademark owner's right to control its goodwill through an exclusive distributorship arrangement"). Plaintiffs have not alleged (and cannot allege) that substantially all of the Everpure filters and filter heads or "filtration systems" they (and their authorized resellers) sell are sold in boxed sets, the characteristic they claim Superwater's products lack. Nor have they or can they allege that they (or their authorized resellers) have never in the past sold Everpure filters, filter heads, or "filtration systems" in that manner. Thus, even if Plaintiffs had alleged non-conclusory facts plausibly suggesting that Superwater sold "filtration systems" that were misrepresented to be Everpure systems (and they have not), their allegations still could not plausibly suggest that Superwater's products are "materially different" from their own sales of filters, filter heads, and "filtration systems."

### B.  No Precedent Supports Plaintiffs' Theories of Trademark Power

Plaintiffs' theory of expansive trademark liability is also legally meritless. According to Plaintiffs' theory, trademark holders have almost unlimited power to police resellers, and can rely on any "subtle difference," including minute differences external to the trademarked product itself, such as the box in in which the product is shipped, to prevent any reseller from selling the trademarked good and recover millions of dollars. Doc. 20 at 6-8. Plaintiffs' theory is absurd, as

5

it would make the "material difference" exception to the first sale doctrine swallow the first sale rule to which it is supposed to be an exception. Resellers regularly place products in shipping boxes that are not made by the manufacturer, and frequently sell products of other manufacturers at the same time as they sell trademarked goods. Unsurprisingly, although Plaintiffs purport to rely on a string of cases for their theory, none of the cases they cite remotely supports it.

To the contrary, all but one of the cases Plaintiffs rely on involved products that, unlike the Everpure-labeled products in Exhibit C, were *physically* altered from the products sold by the trademark holder. *See Davidoff & CIE, S.A. v. PLD Int'l. Corp.*, 263 F.3d 1297, 1302-03 (11th Cir. 2001) (Holding that "resale of a trademarked product that has been altered, resulting in *physical differences* in the product, can create a likelihood of consumer confusion" and crediting finding that the defendant's "etching degrades the appearance of the bottle" which was "otherwise unblemished" and could cause a consumer to "believe that the bottle had been tampered with") (emphasis added); *TracFone Wireless, Inc. v. Anadisk LLC*, 685 F. Supp. 2d 1304, 1309 (S.D. Fla. 2010) (noting that among other alterations, the defendant had removed SIM cards from cell phones before reselling them, making them "inoperable"); *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 709 & 713 (9th Cir. 1999) (finding liability because seller "refurbishe[d] the Rolex dial, sometimes adding diamonds to it, changes the watch bracelet, and/or replaces the Rolex watch bezel" in a manner that affected "the basic performance and durability of the watch" but holding that sale of non-Rolex parts for use with Rolex watches was not a violation); *Rolex Watch U.S.A., Inc., v. Meece*, 158 F.3d 816 (5th Cir. 1998) (Rolex watches reconstructed with non-genuine bands and other parts and diamonds inserted); *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 73 (2d Cir. 1987) (finding "a very real difference in the product itself" as adoption of Cabbage Patch

6

dolls was integral to the product and foreign language papers made it impossible for purchasers to do so).[1] The only case Plaintiffs cite that did not involve sales of a physically altered product, *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1381 (9th Cir. 1984), did not even involve the first sale doctrine, but rather sales of unmarked mattress foundations made with identical fabric as a trademarked mattress and passed off as a "matched set" with the mattress. Plaintiffs allege no facts plausibly suggesting that any of the items in Exhibit C have been physically altered or that Superwater manufactured a product to look like a match to an Everpure product and passed it off as one. Notably absent from Plaintiffs' long string cite is a single case in which any court has found a genuine trademarked product was rendered non-genuine by being packaged in the same box as non-trademarked products, and Defendants are aware of no such case.

Moreover, not only does Exhibit C fail to show anything represented to be an Everpure product other than the genuine unaltered Everpure filter and filter head, but in fact, the packer and source of the shipment is explicitly identified as being Superwater, via the enclosed business card, not Everpure. Given that fact, Plaintiffs cannot state a claim for trademark violations based on Superwater's having purchased Everpure filters and filter heads in bulk and placing them in shipping boxes to send to customers. *See, e.g., United States v. Hanafy*, 302 F.3d 485, 488 (5th Cir. 2002) ("The Supreme Court has stated, in a civil case, that one who purchases a genuine product in bulk and divides it into smaller portions for sale to consumers may do so as long as the products are marked as having been repackaged") (citing *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368-69 (1924)); *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61-62 (2d Cir. 1992) (noting

---

[1] *See also Novartis Animal Health US, Inc. v. Abbeyvet Export Ltd*., 409 F. Supp. 2d 264 (S.D.N.Y. 2005) (Pet pills were not FDA approved, were unflavored, and in different dosages); *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 619-20 (9th Cir. 1993) (fraudulently relabeled chips "exhibited a significantly higher failure rate compared to genuine Intel math coprocessors of the same model").

7

that even seller-repackaged or reconditioned products do not a trademark violation when the source of those actions is identified). Because Plaintiffs' only factual allegations show that Superwater expressly identified itself, not Everpure, as the packer of the package, even had Plaintiffs alleged that Superwater had repackaged Everpure products or altered them, it still could not state a claim for trademark liability.

### C.  Listing Products for Sale Does Not Nullify the First Sale Doctrine

Nor does *Hidalgo Corp. v. K. Kugel Designs, Inc.*, 509 F. Supp. 2d 1247, 1260 (S.D. Fla. 2007), support Plaintiffs' contention that the first sale doctrine does not apply because in paragraph 32 of the complaint they supposedly allege that Superwater advertised non-genuine products using a trademark. First, Plaintiffs grossly misstate the import of *Hidalgo*, which actually held that the doctrine did not apply because the defendant's sale *was* the first sale. If listing a product on a website made the first sale doctrine inapplicable, then the first sale doctrine would be a dead letter, as it is impossible to sell a product without informing purchasers that it is for sale. Indeed, both the Fifth and Seventh Circuits have soundly rejected the notion that the first sale doctrine does not apply when resellers use the trademarked name to advertise the products they sell. *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 484 (5th Cir. 2004) ("House of Vacuums sometimes obtains new Kirby vacuum cleaners, albeit without authorization, and resells them to customers. Because House of Vacuums sells new Kirby vacuum cleaners, House of Vacuums may use the KIRBY mark to advertise that fact"); *Ty Inc. v. Perryman*, 306 F.3d 509, 513 (7th Cir. 2002) (Posner, J.) (rejecting similar argument as to website display of trademarked product name).

Moreover, Plaintiffs have failed to allege facts plausibly suggesting that Superwater advertised non-genuine products as genuine. Paragraph 32 is nothing more than "a formulaic recitation of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

parroting 15 U.S.C. §1114(1), and it cannot be credited in considering the sufficiency of the complaint, *Chandler v. Sec'y of the Fla. DOT*, 695 F.3d 1194, 1198-1199 (11th Cir. 2012). Nor is factual support for this conclusory allegation provided by the inclusion in Exhibit D of a column with links to products sold by Superwater, including Everpure products. Even if Plaintiffs had properly alleged that the Everpure products in Exhibit C are not genuine, and they have not, Plaintiffs do not allege that the listings are for those products. It is also notable that Plaintiffs chose *not* to include any page of the website in which the products behind those links are listed for sale and described.[2]

## II.     Pentair Residential Has Failed to Allege Standing to Sue

Plaintiffs erroneously argue that the Court should "infer" that Pentair Residential has standing because they allege that *both* Pentair Filtration and Pentair Residential are the exclusive users of the trademark. But the inference from that allegation is actually the opposite. For a non-registrant to sue under §1114 or a non-owner to sue under §1125, it must have a license that is exclusive even to the registrant, i.e., it must "assign to the licensee the registrant-licensor's ownership rights." *Trump Plaza of Palm Beaches Condo. Ass'n, Inc. v. Rosenthal*, 92 U.S.P.Q.2d 1259 (S.D. Fla. 2009); *accord ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598 (5th Cir. 2003). The inference from Plaintiffs' allegation that Pentair Filtration is an exclusive user of the mark is that it has *not* assigned its ownership rights to Pentair Residential.

---

[2] Plaintiffs' argument that they allege the elements of *Ross Bicycles* also fails because the allegations they cite are entirely conclusory, as does their argument that use of the trademark is inherently confusing, as that analysis does not apply in the context of a reseller of genuine trademarked goods. *See Scott Fetzer,* 381 F.3d at 486.

Indeed, if Pentair Filtration had, in fact, assigned its ownership rights to Pentair Residential, then Pentair Filtration would lack standing to sue, as its rights would be vested in Residential.[3]

### III.    Plaintiffs Should Be Denied Leave to Amend

Plaintiffs' plea for leave to amend should also be rejected. The Eleventh Circuit has made clear that amendment should not be allowed when, as here, plaintiffs have failed to file a motion for leave, and have "failed to attach the amendment or set forth the substance of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). Moreover, Plaintiffs' failure to even ask the Court to infer multiple facts without which they cannot state a claim, even though Defendants identified those defects in their motion, demonstrates that Plaintiffs cannot allege such facts in good faith, such that amendment would be futile. *See, e.g., Sibley v. Lando*, 437 F.3d 1067, 1074 (11th Cir. 2005) (holding that denial of leave to amend is proper where it would be futile because plaintiffs cannot allege the facts necessary to impose liability).

### CONCLUSION

For all of the reasons set forth above and in Defendants' Motion to Dismiss and Incorporated Memorandum of Law, the complaint should be dismissed, with prejudice.

Dated: January 22, 2013

                                          Respectfully submitted,

                                         /s/ Daniel A. Bushell                                      .
                                         Daniel A. Bushell (Florida Bar No. 43442)
                                         dan@bushellappellatelaw.com
                                         BUSHELL APPELLATE LAW, P.A.
                                         101 Northeast Third Avenue, Suite 1100

---

[3] Plaintiffs' contention that Residential has standing as "any person" under 15 U.S.C. §1125(a), based on a 1972 case, also fails, because in 2007, the Eleventh Circuit adopted a prudential standing test for standing under that statute, which requires, at a minimum, that the plaintiff be a direct competitor of the defendant, in addition to other factors. *See Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156 (11th Cir. 2007). Plaintiffs have alleged no facts suggesting they satisfy any of the prudential standing requirements.

            Fort Lauderdale, Florida 33301
            Phone: 954-666-0220
            Fax:  954-666-0225
            Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day to all counsel of record identified on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.

               /s/ Daniel A. Bushell   .

## **SERVICE LIST**

CASE NO. 12-62163–Civ–Dimitrouleas/Snow

Vijay Gibran Brijbasi (vbrijbasi@ralaw.com)
Laurence Stephan Litow (lslitow@ralaw.com)
Robert Edward Pershes (rpershes@ralaw.com)
ROETZEL & ANDRESS LPA
350 East Las Olas Boulevard, Suite 1150
Fort Lauderdale, Florida 33301