UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-62163-CIV-DIMITROULEAS/SNOW

PENTAIR FILTRATION SOLUTIONS, LLC,
a Delaware Limited Liability Company, and
PENTAIR RESIDENTIAL FILTRATION,
LLC, a Delaware limited liability company,

    Plaintiffs,
vs.

SUPERIOR WATER SYSTEMS CO. INC, a
Florida Corporation, d/b/a SUPERWATER and
JACQUES HARRIS LOBATO, individually,

    Defendants.
_____/

### ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM

THIS CAUSE is before the Court upon Counter-Defendants' Motion to Dismiss Counterclaim (the "Motion") [DE 45], filed herein on June 25, 2013. The Court has carefully considered the Motion [DE 45], Counter-Plaintiffs' Response [DE 56], and Counter-Defendant's Reply [DE 61]. The Court is otherwise fully advised in the premises.

### I.    BACKGROUND

The parties to this action are Plaintiffs/Counter-Defendants Pentair Filtration Solutions, LLC ("Pentair Filtration") and Pentair Residential Filtration LLC ("Pentair Residential," and together with Pentair Filtration, "Pentair" or "Counter-Defendants") and Defendants/Counter-Plaintiffs Superior Water Systems Co. Inc. d/b/a Superwater ("Superwater") and Superwater's President, Jacques Harris Lobato ("Lobato," and together with Superwater, "Counter-Plaintiffs"). Pentair designs, manufactures, and sells water filter and treatment component systems. Pentair owns the trademark registration for the "Everpure" trademark. Superwater produces, distributes,

1

and sells water purification devices, including Everpure-branded products.

Counter-Plaintiffs allege the following facts regarding Superwater and Pentair. Superwater was among the first retailers to begin selling Everpure-branded and other water filtration products on the internet. [DE 30 ¶ 10]. Before opening its website for business, Superwater asked for permission and approval from the owners of the trademarks of products it was selling, including the owner of the Everpure trademark, and received such permission and approval. [*Id.* ¶ 13]. Moreover, Pentair has been aware of the contents of Superwater's website since the website's inception and has deemed Superwater to be an authorized reseller of Everpure products. [*Id.* ¶¶ 14-15]. Additionally, Pentair has been aware of and has approved of Superwater's purchase of Everpure products from Pentair's authorized Master Distributor. [*Id.* ¶¶ 16-17]. However, after over ten years of this awareness, Pentair informed Superwater that it no longer approved of Superwater's practices with respect to the sale of Everpure residential products. [*Id.* ¶ 18].

In or about 2009, Pentair instituted new internet policies regarding the re-sale of Everpure products by retailers on the internet. [*Id*. ¶ 20]. According to Superwater, Pentair instituted these policies to counter discounting in the online marketplace, to control and raise the prices for Everpure products, and to consolidate online sales in the hands of a few tightly controlled entities. [*Id.* ¶ 21]. To enforce these new policies, Pentair threatened to cut-off the supply to any Master Distributor that sold products to a disfavored reseller that did not adhere to the policies. [*Id.* ¶ 22]. Consequently, Superwater's supplier, one of Pentair's Master Distributors, stopped selling Everpure residential products to Superwater. [*Id.* ¶ 23].

In or about 2011, Pentair instituted a minimum advertised price policy for certain internet sellers, requiring those sellers to purchase Everpure products directly from Pentair at specified

prices and to charge minimum re-sale prices to consumers. [*Id.* ¶¶ 24-25]. Those prices precluded profits for these sellers. [*Id.* ¶ 25]. That policy did not apply to offline sellers. [*Id.* ¶ 24]. Pentair threatened to sue Superwater if it continued to sell certain products but refused to agree to that price policy. [*Id.* ¶ 26].

On November 2, 2012, Pentair initiated an action against Superwater, bringing the following counts: Count I for Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114; Count II for Federal Dilution Under 15 U.S.C. 1125(c); Count III for False Designation of Original Under 15 U.S.C. 1125(a); Count IV for Florida Common Law Unfair Competition; and Count V for Statutory Dilution Under Florida Statutes § 495.151. [DE 1]. On May 6, 2013, Pentair represented to Amazon.com that various individual Everpure products sold by Superwater were counterfeit products. [DE 30 ¶ 29].[1] Superwater maintains that this representation was false and that Pentair made the representation to damage Superwater's business. [*Id.* ¶ 31]. Superwater further claims that the representation damaged Superwater's reputation and caused a loss in Superwater's revenue. [*Id.* ¶ 32].

On May 24, 2013, Superwater and Lobato, as Counter-Plaintiffs, brought the following counterclaims: Count I for Defamation; Count II as to Pentair Residential for Violation of 15 U.S.C. § 13; and Count III as to Pentair Residential for Tortious Interference with a Business Relationship. [*Id.* ¶¶ 33-50]. Counter-Defendants now move to dismiss those claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules").

---

[1] On August 8, 2013, the Court issued a preliminary injunction preventing Superwater from selling certain purportedly counterfeit water filtration sets/systems portraying the Everpure trademark. *See* [DE 60]. However, Superwater alleges that Pentair represented to Amazon that other products—not subject to the subsequent injunction or to the arguments giving rise to that injunction—were counterfeit. *See* [DE 30 ¶¶ 28-29].

## II. DISCUSSION

### A. Standard of Review

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . ." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

B.     Analysis

   1.     **Shotgun Pleading**

Counter-Defendants note that Counter-Plaintiffs' Counterclaim incorporates entire counts into successive counts. *See* [DE 30 ¶¶ 38, 46]. This structure constitutes an impermissible shotgun pleading in violation of the requirement under Rule 8 for a short and plain statement of the claim. *See Magluta v. Samples*, 256 F.3d 1282, 1284-85 (11th Cir. 2001). A typical shotgun pleading "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). With a shotgun pleading, it is virtually impossible to know which allegations of fact are intended to support which claims for relief. *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Shotgun pleadings impede the orderly, efficient, and economic disposition of disputes as well as the Court's overall ability to administer justice. *See Byrne v. Nezhat*, 261 F.3d 1075, 1128-1131 (11th Cir. 2001); *Ebrahami v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

Although Counter-Plaintiffs' Counterclaim is not a particularly egregious shotgun pleading, the Court will dismiss that pleading without prejudice to the filing of an amended counterclaim that comports with Rule 8(a)(2). Moreover, the Court will dismiss Counts I and II for the independent reasons stated below.[2]

   2.     **Count I – Defamation**

Counter-Defendants argue that Lobato—as opposed to Superwater—has failed to state a claim for defamation. "Defamation has the following five elements: (1) publication; (2) falsity;

---
[2] The Court does not provide any independent basis for dismissal of Count III.

5

(3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

Counter-Plaintiffs allege that "Pentair published a defamatory statement about Superwater." [DE 30 ¶ 34]. There is no similar allegation regarding a published defamatory statement about Lobato. Thus, Counter-Plaintiffs have failed to state a claim of defamation as to Lobato.

Counter-Plaintiffs assert two arguments in an attempt to overcome this deficiency. First, without citing to any portion of the pleadings, they argue that they use the term "Superwater" to refer to Counter-Plaintiffs collectively. However, the language of the Counterclaim does not support that assertion. The parties are listed as "Defendants/Counter-Claimants Superior Water Systems Co. Inc. d/b/a Superwater.com (Superwater) and Jacques Harris Lobato" and "Plaintiffs/Counter-Defendants Pentair Residential Filtration, LLC and Pentair Filtration Solutions, LLC (collectively, Pentair)." *See* [DE 30 at 11]. There is no indication that the term "Superwater" refers to both Superior Water Systems Co. Inc. and Lobato.

Second, Counter-Plaintiffs argue that any allegations as to Superwater apply to Lobato because he is Superwater's sole owner. Specifically, Counter-Plaintiffs assert that "[i]t is sheer fantasy to suggest that accusing a closely held company of widespread violations of the law says nothing about the person who owns and controls that company." [DE 56 at 3-4]. This argument is unconvincing. Superwater and Lobato are separate Defendants. There is no allegation that Counter-Defendants published a false and defamatory statement about Lobato. Moreover, Counter-Plaintiffs have not cited any authority indicating that statements about a corporation are

6

legally equivalent—for the purposes of defamation or any other cause of action—to statements about a principal or officer of that corporation.

### 3. Count II – 15 U.S.C. § 13 – Robinson-Patman Act

Counter-Defendants argue that Counter-Plaintiffs have failed to state a claim for price discrimination under the Robinson-Patman Act (the "RPA"). To establish a price-discrimination claim, Counter-Plaintiffs must show the following: "1) that the defendant discriminated in price, discounts, or services between purchasers of commodities of like grade and quality in the course of interstate commerce; 2) that the price discrimination resulted in the requisite injury to competition or competitors; and 3) at least the approximate amount of damages." *Tires Inc. of Broward v. Goodyear Tire & Rubber Co*., 295 F. Supp. 2d 1349, 1352 (S.D. Fla. 2003). "The complaining party must allege and prove that there were two sales made by the same seller to at least two different purchasers at different prices." *Pierce v. Commercial Warehouse, Div. of Thompson Automotive Warehouse, Inc*., 876 F.2d 86, 87 (11th Cir. 1989). "Price discrimination is not *per se* violative of the RPA. The Eleventh Circuit requires that a plaintiff demonstrate some sort of real competitive injury and, moreover, that the injury is causally connected to the alleged antitrust violation." *Walker v. Hallmark Cards, Inc.*, 992 F. Supp. 1335, 1338 (M.D. Fla. 1997) (internal citations and quotations omitted). With respect to damages, "[p]rice difference without more does not indicate the amount of lost sales or profits. Self-serving and unsupported assumptions cannot sustain a calculation of going concern value. The burden of putting forth substantial evidence is not satisfied by mere speculation and guess work." *Chrysler Credit Corp. v. J. Truett Payne Co., Inc.*, 670 F.2d 575, 582 (5th Cir. 1982) (finding that plaintiff failed to introduce sufficient evidence at trial of violation, injury, or damages in action for unlawful price discrimination under RPA).

Counter-Plaintiffs have failed to allege sufficient facts to state a claim under the RPA. With respect to the first element, Counter-Plaintiffs point to the following allegations:

> [Pentair Residential] required sellers outside of the few authorized resellers to charge higher prices to consumers such that they could not compete with authorized resellers, and to purchase Everpure products directly from Pentair at prices that would not allow the resellers to earn a profit if they resold the products at competitive prices.
>
> * * *
>
> Pentair Residential has discriminated in price between different purchasers of such commodities of like grade and quality, by selling Everpure products to certain authorized resellers for prices lower than it offered to sell like products to Superwater and other disfavored resellers. Such price differences were not attributable to differences in manufacturing costs or quantities purchased as between authorized resellers and disfavored resellers.

*See* [DE 30 ¶¶ 25, 41]. These allegations contain insufficient factual content for the Court to draw the reasonable inference that Pentair Residential is liable for price discrimination under the RPA. The conclusory statement of "different purchasers of such commodities of like grade and quality" parrots the requisite elements without identifying the products—or prices—at issue. The allegations, therefore, fail to provide Pentair Residential with adequate notice of the basis for the claim. *See Tires, Inc.*, 295 F. Supp. 2d at 1335 ("While Plaintiff need not allege the exact price paid by each of them and [Defendants] for each specific [tire], Plaintiff must give adequate notice of the kind of price discrimination and the range of tires of like grade and quality." (internal quotations omitted) (alterations in original)).

Moreover, even if these allegations satisfied the first element—i.e. by showing that two sales were made by the same seller to at least two different purchasers at different prices—there are not sufficient allegations satisfying the second and third prongs. Counter-Plaintiffs provide the following conclusory allegations:

> The effect of Pentair's price discrimination may be to substantially lessen competition among resellers. As a result of Pentair's unlawful price discrimination, Counter-Plaintiffs have suffered damages, including but not

8

> limited to lost profits, in an amount to be determined at trial. Counter-Plaintiffs have suffered injury to their business or property, have suffered injury of the type the antitrust laws are intended to remedy, and are efficient enforcers of the antitrust laws.

[DE 30 ¶¶ 43-45]. These statements are threadbare recitals of the elements of a claim under the RPA. There are no facts exhibiting the lost sales and/or lost profits incurred by Counter-Plaintiffs as a result of price discrimination. Indeed, Counter-Plaintiffs have failed to allege any facts as to the identity, frequency of sale, purchase price, or sale price of any relevant product(s) before and after Pentair Residential's purported price discrimination. Similarly, Counter-Plaintiffs have not identified any approximate amount of damages. Nor have they cited any precedent indicating that such an approximation is unnecessary. Thus, Counter-Plaintiffs have not satisfied the causation and damages elements of a claim under the RPA.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Counter-Defendants' Motion to Dismiss Counterclaim [DE 45]is hereby **GRANTED**; and

2. Counter-Plaintiffs may file an amended counterclaim on or before November 25, 2013.

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Broward County, Florida, this 14th day of November, 2013.

WILLIAM P. DIMITROULEAS
United States District Judge

9

Copies provided to:

Counsel of record